```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEBRASKA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:08CR3125 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN FORREST, | ) | REPORT, RECOMMENDATION, |
| | ) | AND ORDER |
| Defendant. | ) | |
| | ) | |

Pending before me is the motion to suppress all evidence obtained from the warrantless search of defendant's residence on July 29, 2008,[1] and the search of his storage unit conducted pursuant to a warrant issued by the County Judge for Adams County, Nebraska, and all statements made by the defendant when he was questioned by Hastings, Nebraska Police Officer Brian Hessler following his arrest. Filing No. 24.

The undersigned magistrate judge previously issued a memorandum and order on defendant's request for a <u>Franks</u> hearing. Filing No. 30. The memorandum and order denied the request for a Franks hearing but set an evidentiary hearing regarding the residential search and defendant's custodial interrogation. As stated in the Filing 30 memorandum and order, the analysis and findings of the undersigned with regard to the search of

---

[1] As noted in the court's prior memorandum and order denying the defendant's request for a <u>Franks</u> hearing, (filing no. 30), the defendant's motion was ambiguous concerning whether defendant was seeking to suppress the evidence found during the search of his apartment. At the outset of the evidentiary hearing, the defendant clarified and was given leave to amend his motion to specifically claim that the evidence found in his residence must be suppressed because Lisa Noah lacked actual or apparent authority to consent to the search of defendant's apartment.

defendant's storage unit are incorporated by reference into this report and recommendation.

For the reasons discussed in Filing 30, I find the defendant's motion to suppress the evidence seized during the search of his storage unit should be denied. For the reasons discussed below, I further find that the defendant's motion to suppress the evidence found during the search of his apartment and the statements he made during Officer Hessler's questioning should also be denied.

## STATEMENT OF FACTS

On July 29, 2008, at approximately 9:40 p.m., Lisa Noah arrived at the lobby of the Hastings, Nebraska police department and reported that she was involved in an altercation with the defendant, John Forrest. Officer Hessler responded to the complaint. Ms. Noah had one tooth knocked out and another tooth dangling in her mouth.

Officer Hessler escorted Noah to an interview room to obtain further information concerning the alleged assault. Noah explained that she and the defendant had lived together in an apartment located at 214 ½ Eastside Boulevard. She told that officer that due to prior difficulties in their relationship, she had broken up with the defendant and moved out of their apartment about three months earlier, but she moved back into the apartment two weeks later and they had lived together consistently since that time.

Officer Hessler knew that Noah and the defendant had lived together at least since January of 2008. During an investigation during that time frame regarding a theft occurring near the 214 ½

Eastside Boulevard apartment, Officer Hessler had contacted Ms. Noah at that apartment. Ms. Noah was, at that time, the subject of an outstanding warrant, and Officer Hessler arrested her on the warrant a few days later.

Ms. Noah asked Officer Hessler to explain how the police would respond to her report and what would happen to the defendant. When Officer Hessler stated he would speak with the defendant, Ms. Noah warned that the defendant could be violent and told Officer Hessler not to approach the defendant by himself. In response to the officer's additional inquiries regarding the defendant's propensity for violence, Ms. Noah stated the defendant had a gun. Ms. Noah said she asked the defendant to remove the gun from the apartment, but did not know if the defendant had actually done so.

Ms. Noah did not state at any time during this conversation that she had moved out of the defendant's apartment a few days earlier or that her name was not actually on the apartment lease.

Officer Hessler contacted a domestic violence victim support group, SASA, to assist Ms. Noah, and proceeded in his patrol vehicle to the 214 ½ Eastside Boulevard apartment to contact the defendant. Hastings police officers Brooks and Scarlett also separately arrived in their patrol vehicles at that location to assist. Each of the officers was armed and in uniform, but weapons were never drawn during the ensuing contact with the defendant.

The 214 ½ Eastside Boulevard apartment is a basement apartment. The entrance is on the west side of the building. Officers Hessler and Brooks approached the building from the

west, passed through the gate of the fenced property, and went to the concrete five-foot by five-foot pad located adjacent to the basement apartment door. Officer Scarlett stood ten to twenty feet behind them to the left, behind a shed and out of defendant's sight as he responded at the basement door. Officer Hessler was located in front of the door and Officer Brooks was located a couple steps behind Officer Hessler to his right.

Shortly after 10:00 p.m., Officer Hessler knocked on the defendant's apartment door, and the defendant opened it. The defendant was told that Ms. Noah had accused him of domestic assault. Although he denied the accusation, the defendant was arrested for domestic assault and handcuffed. The defendant then asked to re-enter his apartment to retrieve his shoes, cigarettes, and keys, but Officer Hessler denied this request. The defendant told officer Brooks where his keys, shoes, and cigarettes were located in the apartment, and with the defendant's consent, Officer Brooks entered the apartment, retained these items, and handed them to the defendant. Officer Brooks saw nothing incriminating during this brief entry into the defendant's apartment.

The defendant asked Officers Hessler and Brooks to lock his apartment and take Ms. Noah's key to the apartment from her. The officers responded that since Ms. Noah was a resident of the apartment, they had no authority to make her hand over her apartment keys. They explained that the police cannot take the apartment key from someone who lives in the apartment. In response, the defendant asked what would happen if Ms. Noah entered the apartment and took or destroyed his property. He never stated at that time, or during any of his contacts with the

officers on July 29 or July 30, that Ms. Noah did not live in the apartment.

The officers did not ask the defendant about his alleged gun or for consent to search the residence.  The defendant was transported to the Adams County Jail by Officer Hessler.  Officer Brooks followed in a separate patrol vehicle.  The defendant was not questioned during his transport to the jail.

After the defendant was placed in the jail, Officer Hessler contacted Ms. Noah and asked if she would meet the officers at the apartment and allow them to search for the defendant's gun.  She agreed to do so.  At approximately 10:53 p.m., Officers Hessler and Brooks went to the residence, and Ms. Noah met them at that location shortly thereafter.  Officer Hessler again asked if she was willing to let them look in the apartment for the defendant's gun.  She consented to the search, and opened the door with an apartment key.  Ms. Noah entered the apartment, retrieved the dog inside, and placed it in her vehicle.  The officer then entered the apartment with Ms. Noah.  Before entering the apartment with the officers, Ms. Noah never stated she did not live in the apartment.  She stated she wanted a protective order.

Officers Hessler and Brooks and Ms. Noah went into the bedroom and searched above the ceiling tiles for the defendant's gun.  When they did not find it at that location, Officer Hessler searched the bedroom dressers and closets for the weapon.  During the course of this search, they found men's and women's clothing, but no gun.  Officer Brooks began to search the kitchen area; Officer Hessler, accompanied by Ms. Noah, began searching the living room area.  On at least one occasion during the search,

Officer Hessler asked and confirmed that Ms. Noah had no objection to the search.  Officers Hessler and Brooks found male and female hygiene products, and mail addressed to both the defendant and Ms. Noah, but they did not find a gun in the residence.  While in the living room with Ms. Noah, Officer Hessler asked if she knew of any other location where the defendant may have placed the gun.  She stated the gun may be in the defendant's storage unit or his pickup.

Although the officers had not found a gun, they had found marijuana plants, pots, grow lights, and chemicals possibly indicative of methamphetamine manufacture.  The presence of these chemicals prompted the officers to stop the search and exit the residence until further assistance arrived at the location, including the clandestine laboratory unit.

Officer Scarlett arrived at the scene.  Since the officers entered to find defendant's gun, but had actually found and intended to further search for evidence of illegal drug activity in the home, Ms. Noah was asked for written consent to search the apartment.  Using the in-car camera within a patrol vehicle, the officers video-recorded their request of Ms. Noah for written consent to search the apartment.  See exhibit 2.  The written consent to search form was completed by Officer Hessler, read aloud to Ms. Noah, and signed by Ms. Noah at 11:30 p.m.  At that time, Ms. Noah stated that she did not own the apartment, but rented it.  She never stated that she did not live in it, nor that she had no control over it.  See exhibit 1.

Police officers re-entered the apartment to complete the search.  Ms. Noah remained outside.  After the items seized were secured and inventoried by Officers Hessler and Brooks, the

apartment was locked. The search inventory was listed on the lower portion of the consent to search form. The form was presented and explained to Ms. Noah, and she was asked to sign beneath the listing. She did so, never stating she lacked authority to sign for the inventoried items. The officers left, with Ms. Noah still at the apartment and in possession of her apartment key.

Officer Hessler returned to the Adams County Jail to speak with the defendant. The jail has two floors, and two correctional officers were on duty at the time. The interview room typically used for conducting questioning is located on the lower level. The defendant was housed in a group cell on the second level. Correctional Officer Mark Walther was the supervising officer.

Officer Hessler advised Officer Walther that he was interested in questioning the defendant. At approximately 3:00 a.m. on July 30, 2008, Officers Hessler and Walther went to the defendant's cell, and Officer Walther asked the defendant if he was willing to speak with Officer Hessler. The defendant said, "Yes."

Since Officer Hessler was concerned that the defendant may get aggressive if confronted with the evidence found during the search of his residence, the officers decided the interview should be conducted near the defendant's cell. The defendant was escorted by the officers to the recreation room located about forty-five feet from his cell. The room is forty feet by thirty feet, and is equipped with audio and video equipment, but not high-quality equipment. The defendant sat on one side of a picnic table in the room; Officer Hessler on the other side. The

7

defendant was not restrained. Officer Hessler was in uniform, and had pepper spray, handcuffs, and a Taser on his service belt, but he was not armed with a gun or baton. Officer Walther, also in uniform, remained in the room and stood some distance behind Officer Hessler during Officer Hessler's contact with the defendant. Officer Walther witnessed Officer Hessler's interaction with the defendant, but did not participate.

Officer Hessler keeps an "Advice of Rights" card on his person and, reading directly from this card, (see exhibit 3), advised the defendant of his <u>Miranda</u> rights. The defendant indicated he understood his rights and agreed to be questioned without an attorney present. The defendant did not appear intoxicated or under the influence, and appeared alert. He had a history of previous contacts with law enforcement. The defendant was not threatened or promised anything to secure his consent to provide a statement.

Officer Hessler questioned the defendant for only six minutes. At no time before or during this questioning did the defendant indicate he was reluctant to speak with law enforcement, and he never asked that the questioning be stopped. During the course of the questioning, Officer Hessler asked defendant for consent to search his storage unit. The defendant refused to provide consent.

When the questioning was complete, the defendant was escorted without incident back to his cell.

DISCUSSION

A.   Residential Search:   Fourth Amendment.

The defendant claims the search of his residence was unlawful because Ms. Noah had no actual or apparent authority to consent to the search.

"For a third-party consent to a warrantless police search to be legally effective, the consenting party must have actual or apparent authority to give the consent." U.S. v. Miller, 152 F.3d 813, 815 (8th Cir. 1998).  "A third party has actual authority to consent to a search if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes. . . . [A] third party has apparent authority to consent to a search when an officer reasonably, even if erroneously, believes the third party possesses authority to consent." U.S. v. Chavez Loya, 2008 WL 2277553, at *7 (June 5, 2008, 8th Cir. 2008) (quoting United States v. Andrus, 483 F.3d 711, 716 (10th Cir. 2007)).  The police cannot "rely on a third party's consent to 'intentionally bypass' a person who is present and has a superior privacy interest in property to be searched. U.S. v. Brokaw, 985 F.2d 951, 953 -954 (8th Cir. 1993).  See also, Georgia v. Randolph, 547 U.S. 103, 122-123 (2006)(holding police may conduct a valid warrantless search of a residence if one occupant consents, but if the co-occupant is physically present and expressly refuses consent, the refusal is dispositive as to the co-occupant).

"[T]he relevant inquiry is whether the facts available would have justified a reasonable officer in the belief" that the consenting party had authority over the property to be searched.

9

Chavez Loya, 2008 WL 2277553 at *7 (quoting U.S. v. Czeck, 105 F.3d 1235, 1239 (8th Cir. 1997)).

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises? Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

Illinois v. Rodriguez, 497 U.S. 177, 188-189 (1990).

The facts establish that Ms. Noah had actual authority to consent to the search of the defendant's apartment. Officer Hessler knew Ms. Noah was living at this apartment as early as January 2008. During her contacts with the officers on the night of July 29, she stated she rented and lived in the apartment, and never recanted these statements. When the defendant asked that the apartment key be taken from Ms. Noah, the officers advised the defendant that she was claiming she lived in the apartment. When the faced with this statement, the defendant said nothing to the contrary. The contents of the apartment included both men's and women's hygiene products and clothing, and mail addressed to both the defendant and Ms. Noah.

Ms. Noah opened the property with her key. She had both mutual use and joint access to the residence, and actual authority to consent to the search. The search of the defendant's apartment, pursuant to Ms. Noah's consent, did not violate the Fourth Amendment. The evidence seized during this search should not be suppressed.

B.  Suppression of Statements:  Fifth Amendment.

The evidence establishes that the defendant was advised of his Miranda rights before he was questioned by Officer Hessler, and he acknowledged that he understood these rights.  The defendant indicated he was willing to waive his rights, and he agreed to be questioned without an attorney present.

A waiver of the Fifth Amendment privilege against self incrimination is valid if it is made voluntarily, knowingly, and intelligently.  United States v. Syslo, 303 F.3d 860, 865 (8th Cir. 2002).  A waiver is "knowing and intelligent" if it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right.  A waiver is "voluntary" if it was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception.  Thai v. Mapes, 412 F.3d 970, 977 (8th Cir. 2005).  The ultimate question is whether the defendant's will to remain silent was overborne and his capacity for self-determination critically impaired.  United States v. Santos-Garcia, 313 F.3d 1073, 1079 (8th Cir. 2002).

The defendant speaks English and freely conversed in English with Officer Hessler.  His Miranda rights were read aloud.  Although the defendant was questioned at 3:00 a.m., he was asked if he was willing to be questioned, and he agreed to questioning before being escorted to the recreation room.  He appeared awake and responded appropriately to the officer's questions.  The defendant was not restrained, and the officer was not armed with a gun or baton. Although two officers were present in the room, only Officer Hessler was involved in the questioning.  The interview occurred in Officer Walther's presence, and in a large

11

room only forty-five feet from a group cell housing other detainees. The defendant did not appear to be under the influence of drugs or alcohol. Officer Hessler did not promise anything, or threaten or coerce the defendant to waive his rights or answer the officer's questions. The defendant had prior experience with law enforcement. He was not intimidated by Officer Hessler and was not succumbing to pressure, as evidenced by the fact that when asked for consent to search the storage unit, the defendant refused consent. The interview lasted only six minutes, and the defendant never asked for a lawyer or for the questioning to stop.

Based in the evidence, I conclude the defendant was not susceptible to police pressure and his will was not overborne. See e.g. United States v. Jimenez, 478 F.3d 929, 932-33 (8th Cir. 2007)(holding defendant's statement was admissible where the officer read the defendant her rights, she stated she understood each of the rights and wanted to waive her rights and speak to the officer, she was distraught but not under the influence at the time, and she was not threatened or promised anything to secure her consent or statements). The defendant knowingly, intelligently, and voluntarily waived his Miranda rights, and his statements were voluntarily made. His motion to suppress his statements should be denied.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, that the motions to suppress, filings 24, be denied in all respects.

The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

    IT FURTHER HEREBY IS ORDERED:  Trial is set to commence at 9:00 a.m. on March 23, 2009, for a duration of three trial days before the Honorable Richard G. Kopf in Courtroom 1, United States Courthouse and Federal Building, 100 Centennial Mall North, Lincoln, Nebraska. Jury selection will be at the commencement of trial.

    DATED this 16th day of January, 2009.

                              BY THE COURT:

                              s/ *David L. Piester*
                              David L. Piester
                              United States Magistrate Judge